IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

HARDY L RUTH,

        Petitioner,

v.                                           CASE NO. 4:07-cv-00108-MP-MD

BILL MCCOLLUM,
WENDEL C WHITEHURST,

        Respondents.

_____/

# O R D E R

This matter is before the Court on Doc. 28, the Report and Recommendation of the Magistrate Judge, recommending that the habeas petition in this case be denied. The petitioner filed objections, Doc. 33, and the Court has conducted a de novo review of the objected to portions of the Report and Recommendation. For the reasons which follow, the Court concludes that the Report and Recommendation should be adopted and the habeas petition denied.

At a little after 2:00 a.m., a police officer was alerted by radio that a home invasion robbery had occurred at a certain apartment complex and was given a description of the alleged perpetrators, including their haircut and clothing. When the officer arrived at the complex, she encountered Petitioner. He was wearing clothing similar to that described over the radio, had a similar haircut and was walking toward the apartments. When she asked him to talk with her, he asked her if she knew where "Marlin Perkins" lived. She remembered the name from the show Wild Kingdom, and also noticed that despite cold weather he was sweating profusely. Based on the above facts, the officer detained Petitioner and brought him to a "show-up" before he victims. Although they could not positively identify the Petitioner, they did not exclude him either.

Eventually, the officer learned that another individual had been arrested and had named Petitioner as being involved. She then brought Petitioner to the Sheriff's Department.

After arriving at the Sheriff's department, and after being read his <u>Miranda</u> rights and after signing a form indicating he understood them, Petitioner made a full confession of the crime. He eventually led investigators back to the apartment complex to find the gun and the property stolen in the robbery.

In this case, therefore, there is evidence concerning two sets of statements. The first set of statements occurred at the moment the officer first encountered Petitioner but before he was placed in the police car. Petitioner described these statements as follows:

> I was questioned in the field when they first put me in handcuffs, asked me why I was sweating, where I was headed to, who dropped me off, all that.

(Report and Recommendation, Doc. 28, page 8-9). The second set of statements occurred during the interrogation at the station by Investigator Suleski where Petitioner admitted his involvement in the crime and eventually led investigators to the shotgun used and property stolen in the robbery.

In his habeas petitioner, Petitioner raises two grounds:

> (1) Whether Petitioner's counsel provided ineffective assistance by failing to move to suppress Petitioner's statements to the police.

> (2) Whether Petitioner's counsel provided ineffective assistance by failing to move to suppress or object to the admission of the physical evidence located with Petitioner's assistance.

In support of both of these grounds, Petitioner argues that the officer did not have reasonable suspicion to detain him or probable cause to eventually arrest him. As Petitioner phrases it in his Attachment to Petition for Writ of Habeas Corpus, Doc. 1, pp. 7-16,

> Mr. Ruth's initial detention and subsequent arrest were illegal. Therefore Mr.

Ruth's statements were the product of an illegal arrest. The *Miranda* warning alone was not sufficient to break the chain of illegality between the arrest and the confession.

The Court agrees with the Magistrate Judge that Petition is wrong regarding both the initial detention and the eventual arrest. With regard to the initial detention, a police stop of an indiviual may be reasonable if the police officer has a "reasonable suspicion" that the person in question is or was involved in criminal activity, pursuant to the principles set forth in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). United States v. Tapia, 912 F.2d 1367, 1370 (11th Cir.1990). When a police officer has such a reasonable suspicion, he is justified in lengthening a stop for further questioning beyond that related to the initial stop. United States v. Pruitt, 174 F.3d 1215, 1220 (11th Cir.1999). Pursuant to the principles set forth in Terry, whether a police officer had a reasonable suspicion is determined based on the totality of the circumstances. Tapia, 912 F.2d at 1370. Also, while the police officer's level of suspicion need not be supported by proof of wrongdoing by a preponderance of the evidence or a fair probability that evidence of a crime will be found, it must be "more than an inchoate hunch." Id. (quotation omitted). Accordingly, the police officer must "be able to point to specific and articulable facts which, taken together with rational inferences from those facts," warrant the intrusion. Id. (quotation and citation omitted).

Although a reasonable suspicion that criminal activity is afoot can justify a prolonged stop, the Supreme Court has held that a reasonable seizure can mature into an unreasonable arrest where its scope is not "strictly tied to and justified by the circumstances which rendered its initiation permissible." Terry, 392 U.S. at 18-19, 88 S.Ct. at 1878 (quotation omitted). To determine whether a stop became an arrest, Courts apply four non-exclusive factors: (1) the law enforcement purposes served by the detention, (2) the diligence with which the police pursued

the investigation, (3) the scope and intrusiveness of the detention, and (4) the duration of the detention. Acosta, 363 F.3d at 1145-46. Here, Petitioner was observed walking the streets at 2:00 a.m. in the morning, wearing dark clothes that matched the description of an armed robbery suspect in the same apartment complex and who was sweating despite cold weather. When approached by police, he began asking where a person lived as if he were planning to just drop in unexpectedly at 2:00 a.m. These specific and articulated facts suffice to gave rise to a reasonable suspicion that Petitioner was engaged in a crime. Further, the evidence shows that the police did not unreasonably delay the investigation. They immediately set up a "show up" before the victims and then within two hours the reasonable suspicion matured into a full-blown probable cause once the confession of the other individual named Petitioner as being involved.

That is, once the officer in the field learned that another individual arrested that night had confessed and named the Petitioner, full blown probable cause existed for an arrest. The Court agrees with the Magistrate Judge and the state court that the "facts and circumstances within the officer's knowledge and of which [the officer] had reasonably trustworthy information"-- the matching clothes, the sweating, the dubious question about where Marlin Perkins lived, and the fact that a co-defendant had indicated that he was involved – "are sufficient to warrant a prudent [person] in believing the petitioner had committed or was committing an offense" <u>Beck v. Ohio</u>, 379 U.S. 89, 91 (1964). Thus, probable cause existed for the arrest and the state Court was not unreasonable in concluding that Petitioner's counsel was not ineffective for failing to move to suppress based on the arrest.

In his habeas petition, Petition bases both grounds on the illegality of the detention and the arrest. At certain points in later documents, however, the Petitioner appears to raise a separate argument. Petitioner appears to argue that his statements to police before he was

brought to the station and given his <u>Miranda</u> rights were unconstitutionally offered as evidence

against him at trial.  For example, in a colloquy during the trial, the Judge informed Petitioner,

"So the only testimony I've heard today is that you were at the station, they gave you *Miranda,*

and then the statement was made."  The Petitioner disagreed, stating,

> That wasn't the order of things.  It wasn't.  I was questioned, then *Miranda* rights
> was asked or told of me.  I was questioned in the field when they first put me in
> handcuffs, asked me why I was sweating, where I was headed to, who dropped
> me off, all that.  That's why I had asked him to do that[1] at first.

Report and Recommendation, pp. 8-9.  As the trial judge, Petitioner's counsel and later the state

3.850 court explained, however, none of the responses given by Petitioner before he was brought

to the station were used against him at the trial, and even if they had been, the questions were in

response to citizen contact questions rather than custodial interrogation.  Thus, a motion to

suppress based on this theory would have had no merit.

In conclusion, for the reasons given above, neither of the motions to suppress suggested

by Petitioner would have had any merit.  Counsel cannot be held ineffective for failing to raise

obviously nonmeritorious claims.  <u>Canty v. State</u>, 715 So.2d 1033, 1034 (Fla. 1st DCA 1998).

Thus, the state court was not unreasonable in rejecting Petitioner's ineffective assistance of

counsel claims.  Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

1.      The Report and Recommendation of the Magistrate Judge, Doc. 28, is adopted
and incorporated herein.  The petition for writ of habeas corpus (doc. 1) challenging the
convictions and sentences in *State of Florida v. Hardy L. Ruth*, in the Circuit Court of
Leon County, Florida, case number 02-4276, is DENIED and the clerk is directed to
close the file.

2.      The motion to withdraw as counsel, Doc. 34, is GRANTED to the following

---

[1]By "do that", Petitioner is referring to having counsel file a motion to suppress.

extent.  Counsel is directed to file a Notice of Appeal within the time limits established by the rules.  After the filing of the Notice, counsel will be relieved as counsel of record in this case.

**DONE AND ORDERED** this _5th_ day of January, 2010

_____s/Maurice M. Paul_____
Maurice M. Paul, Senior District Judge